# United States Court of Appeals

## For the First Circuit

No. 02-1938

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN B. STEWART,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Lynch, Circuit Judge,
Coffin and Porfilio,[*] Senior Circuit Judges.

Bruce M. Merrill for appellant.
F. Mark Terison, Senior Litigation Counsel, with whom Paula D.
Silsby, United States Attorney, was on brief for appellee.

July 29, 2003

---

[*]Of the Tenth Circuit, sitting by designation.

**COFFIN, Senior Circuit Judge.** Appellant John B. Stewart entered a conditional guilty plea to a cocaine distribution charge after the district court denied his motion to suppress physical evidence seized from his home pursuant to a warrant. The district court concluded that the state law enforcement agents who secured the warrant recklessly left out of their affidavit negative facts about two confidential informants, but that probable cause to support issuance of the warrant existed even with full disclosure of the withheld material. See United States v. Stewart, 183 F. Supp. 2d 91, 102 (D. Me. 2002). At oral argument, appellant acknowledged that the government's omissions did not negate probable cause, but maintained that the seized evidence must nonetheless be suppressed to deter future abuses of Fourth Amendment rights. We conclude that, whether or not suppression ever would be an available remedy for a Fourth Amendment violation when an affidavit is otherwise adequate, it is unwarranted here because the strength of the probable cause showing remains unusually high even after consideration of the omitted material.

## I. Background

Appellant was arrested in July 2001 after a four-year investigation of his involvement in cocaine trafficking by the Maine Drug Enforcement Agency (MDEA). Among the agents' sources of information were three confidential informants, two identified individuals, three concerned citizens, and four controlled

purchases. Search warrants were executed on appellant's residence in Rockport, Maine, on June 18 and July 13, 2001, by federal, state and local law enforcement authorities. In the first search, agents seized 512.6 grams of cocaine, two sets of scales, $27,546 in cash, and firearms. The second search yielded 490.3 grams of cocaine and about $2,000 in cash.

Appellant challenged both warrants, arguing that the state drug agents had misrepresented the informants' reliability by excluding significant negative information about their histories. With the government's agreement, the court held a Franks hearing to explore the validity of the warrants. See Franks v. Delaware, 438 U.S. 154 (1978). After two days of testimony, the court ruled that MDEA agents and the assistant attorney general supervising the case had recklessly excluded multiple pieces of information from the two warrant affidavits and intentionally omitted one material fact from the second warrant application.

Missing from the first affidavit was the following information: (1) one of the two prime informants, Carl Creamer, had been hospitalized at a psychiatric facility for ten days in April 2001, two months before he became an active informant and made a controlled purchase of cocaine from appellant; (2) Creamer was arrested in late May 2001, at a time when he was being evaluated as a possible informant, for operating under the influence and marijuana possession; and (3) the other prime informant, Karen

York, had been arrested and charged with a drug-related crime in Rhode Island in November 2000. As for the second affidavit, the district court again characterized the exclusion of York's Rhode Island drug arrest as reckless, and it deemed intentional the agents' and prosecutor's failure to reveal that York had been present at appellant's home – and in possession of a quantity of cocaine – when the first warrant was executed.

The court concluded, however, that even if the improperly omitted information had been included in the warrant applications, probable cause nonetheless would have been established. It therefore denied appellant's suppression motion, leading to his conditional guilty plea. Because the charge stemming from the July search was dropped, we address on appeal only the first search warrant but consider the second affidavit to the extent that it adds context for the earlier conduct.

## II. Discussion

Appellant's concession that the first warrant application established probable cause to search his home even when adjusted to include all relevant information makes it unnecessary for us to review the application's contents to determine whether the necessary threshold was met. Indeed, the district court's analysis of probable cause was thorough and persuasive, and had the issue been contested, we in all likelihood would have adopted its determination as our own. Appellant instead presses an argument

that, despite the omissions' lack of material impact on the probable cause determination, the district court erred by not ordering suppression as a sanction for the misconduct of the state officials. As we now explain, whether Franks permits such a remedy is an issue we need not reach.

Both Franks and our own related precedent suggest that suppression should be ordered only if the warrant application, cleansed of any false information or clarified by disclosure of previously withheld material, no longer demonstrates probable cause. See Franks, 438 U.S. at 156 (holding that a search warrant must be voided and the fruits of the search suppressed if perjury or reckless disregard for the truth is established and "the affidavit's remaining content is insufficient to establish probable cause"); see also United States v. Higgins, 995 F.2d 1, 4 (1st Cir. 1993) ("When a defendant offers proof of an omission, the 'issue is whether, even had the omitted statements been included in the affidavit, there was still probable cause to issue the warrant.'" (citation omitted)); United States v. Young, 877 F.2d 1099, 1102 (1st Cir. 1989) (misstatements in a warrant affidavit are "immaterial" where "there is still a more than adequate showing of 'probable cause'").

These cases, however, while establishing that suppression is required when a challenged warrant is stripped of facts material to the determination of probable cause, do not explicitly prohibit a

court from utilizing suppression, as a matter of discretion, to serve the exclusionary rule's prophylactic purpose, deterring police misconduct. See Franks, 438 U.S. at 167 (referring to the holding in the case as related to "when exclusion of the seized evidence is mandated" (emphasis added)); Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001) (exclusion of evidence derived from Fourth Amendment violations "is designed to deter law enforcement personnel from disregarding constitutional mandates").

But any such hurdle would be a high one. If suppression were authorized in such circumstances, it would be utilized sparingly and in rare and particularly egregious situations. See United States v. Hasting, 461 U.S. 499, 506-07 (1983). Concededly, there is evidence in this case of a disturbing pattern. Not only did the district court supportably find four reckless omissions and one intentional withholding of information in the two warrant applications, but also of significance are the seeming inconsistencies in the agents' testimony at the Franks hearing about who knew the undisclosed information, and when.[1]

---

[1] For example, Agent Deetjen testified that he told Supervisor Connick about Creamer's psychiatric hospitalization shortly after Creamer was interviewed on April 12, 2001, but Connick testified that that information was not known when Agent Woodman's affidavit was prepared for the mid-June search. Woodman and Assistant Attorney General Nomani also testified that they did not have that information. Former Special Agent Pease, however, testified that he advised both Connick and Nomani of this information, and that Connick appeared to have already known about it. In addition, Pease testified that he discussed York's Rhode Island arrest with Nomani and Connick before the first search warrant. They both

-6-

Yet the showing of probable cause in the first warrant application, even taking into consideration the omissions, could hardly have been stronger. Three days before the search warrant was executed, during a controlled purchase by Creamer that was recorded by agents, appellant asserted that he expected to have "plenty" of additional cocaine the following Monday, the day of the search. Certainly in the context of the ongoing investigation, which included three previous controlled buys, that statement provided compelling evidence that appellant would be found in possession of cocaine on June 18. Although full disclosure of the informants' pasts was necessary to meet the government's obligation to give the magistrate judge all relevant information, see United States v. Nelson-Rodriguez, 319 F.3d 12, 33 (1st Cir. 2003) ("an issuing judge . . . relies on the government to present the full case for its belief in probable cause, including any contraindications") (footnote omitted), the other available facts rendered the undisclosed information of extremely minor significance in the probable cause calculus.

In these circumstances, we find no error in the district court's denial of appellant's suppression motion and consequently affirm the judgment of conviction. However, as we said in another case in which we deemed the probable cause showing adequate despite

testified, however, that they were unaware of that arrest before the warrant was obtained.

some deficiencies in the warrant application, "'the best way to ensure that' the Fourth Amendment's probable cause requirement is complied with is to meticulously comply with it." United States v. Khounsavanh, 113 F.3d 279, 289 (1st Cir. 1997) (citations omitted).

Meticulous compliance involves more than an agent's own judgment as to the ultimate importance of a piece of information to a judgment of probable cause. The agent also has the obligation, in the interest of both judicial economy and fairness, to ask the further question, "Is this information so trivial, remote or irrelevant that no reasonable official could assign it weight in coming to a decision to issue the warrant?" Unless an affirmative answer can be given, the information should be included – even if, in context, its weight seems too slight to tip the balance away from a finding of probable cause.

Indeed, this case calls for a word of caution. The government's case has needlessly suffered from the state agents' inappropriate decisions to sanitize the information supplied to support the search warrant. It is clear that federal courts have inherent supervisory authority and may issue a variety of orders short of suppression for misconduct, including discipline of counsel. It also is clear that the office of the United States Attorney has some responsibility for the evidence it presents, even when the evidence is gathered by state authorities. We stress the need for both federal and state authorities to cooperate to the end

that applications for search warrants meet the highest standards of professionalism and make it unnecessary for district courts to consider the available range of escalating sanctions. We direct the Clerk of Court to serve copies of this opinion on the Attorney General of Maine and the head of the Maine Drug Enforcement Agency.

Affirmed.